UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TIMOTHY R. RASNICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:08-CV-00188 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

In August 1994, Plaintiff Timothy Rasnick was granted a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act for impairments he sustained as a result of a closed head injury. However, in 2005, the Commissioner of Social Security ("Commissioner") reviewed Rasnick's disability status and determined that his period of disability and DIB had ceased as of August 1, 2004, finding that his impairments had improved and were no longer severe. Rasnick appealed the Commissioner's decision, and the appeal was referred to the undersigned Magistrate Judge on August 19, 2008, by District Judge Theresa Springmann for the issuance of a Report and Recommendation. (Docket # 1, 4.)

Having reviewed the record and pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(d)(1), the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. This Report and Recommendation is based on the following facts and principles of law.

## I. PROCEDURAL HISTORY

Rasnick applied for DIB on April 2, 1998, and the Commissioner awarded him DIB as of August 1, 1994. (Tr. 51-52, 104.) He was re-evaluated in 2004, and the Commissioner concluded that he was no longer disabled as of August 1, 2004, ceasing his DIB payments two months later. (Tr. 48, 97.)

Rasnick filed an application for continued disability on December 16, 2004. (Tr. 90-96.) The Commissioner denied his application initially and upon reconsideration, and Rasnick requested an administrative hearing. (Tr. 50.) On March 22, 2005, Administrative Law Judge (ALJ) Richard VerWiebe conducted a hearing at which Rasnick (who appeared *pro se*), his wife, his father, and a vocational expert testified. (Tr. 449-63.)

On November 20, 2007, the ALJ rendered an unfavorable decision to Rasnick, concluding that he was not disabled as of August 1, 2004, because his impairments had improved and were no longer severe. (Tr. 22-31.) Rasnick then secured counsel and requested that the ALJ's decision be reviewed by the Appeals Council. (Tr. 11-18.) The Appeals Council denied Rasnick's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 8-10.) Rasnick filed a complaint with this Court on August 11, 2008, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II. RASNICK'S ARGUMENTS

Rasnick alleges essentially three flaws with the Commissioner's final decision. Specifically, he claims that the ALJ: (1) erroneously found that his impairments were non-severe; (2) improperly evaluated the credibility of his symptom testimony; and (3) did not obtain

a valid waiver of counsel and did not adequately develop the record. (Mem. in Supp. of Summ. J. or Remand ("Opening Br.") 10-20.)

### III.  FACTUAL BACKGROUND[1]

*A.  Background*

At the time of the ALJ's decision, Rasnick was thirty-four years old; had an associate's degree in computer design technology; and possessed work experience as a cashier, dough mixer, and material handler. (Tr. 51, 79, 176, 190.)  Rasnick obtained DIB as of August 1, 1994, at the age of twenty-one due to impairments resulting from a closed head injury. (Tr. 51-52, 454-55.)  Rasnick has not performed substantial gainful activity since that time and has not worked since 2003. (Tr. 106-14, 208, 455-56.)

At the hearing, Rasnick testified that he has tried to work since his closed head injury but has lost all of his jobs because he could not "keep up" due to his poor coordination, especially in his left hand. (Tr. 455-56.)  Rasnick's father also testified, stating that Rasnick had tried different jobs in the family's manufacturing company but was unsuccessful due to his poor memory, tendency to get distracted and easily fatigued, and low frustration levels. (Tr. 460.)  Rasnick does, however, continue to perform household tasks for his father, such as landscaping and mowing the lawn. (Tr. 460-61.)

Rasnick stated that his typical day involves caring for his baby when his wife is at work, though tasks such as changing a diaper take him "five times longer than anyone else to do". (Tr. 458.)  Rasnick also explained that because of his coordination difficulties, his wife has to cut up his meat for him and he cannot carry a cup of water in his left hand without spilling it. (Tr. 457,

---

[1] The administrative record in this case is voluminous (463 pages).  Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

3

459.) His wife testified that she thinks his "shakiness" has worsened in the last two years. (Tr. 458.)

*B. Medical Evidence of Record Prior to Rasnick's Award of DIB in 1998*

On November 12, 1987, Rasnick, who was fourteen years old at the time, was struck by a truck while riding his bicycle and suffered a closed head injury. (Tr. 248-49.) After several weeks in a coma, Rasnick endured a lengthy process of physical, speech, and other therapies due to vocal cord paralysis, swallowing difficulty, nystagmus, marked dysmetria in his right upper and lower extremities, hyperreflexia, ataxia of gait, and cognitive problems. (Tr. 249, 264, 273-74, 296-301.)

In 1990, Rasnick injured his hand and was noted to have spastic quadriparesis and hyperreflexia. (Tr. 290-95.) In January 1991, Rasnick underwent cervical fusion surgery to prevent future injury to his spinal cord. (Tr. 291-94.)

In March 1993, Rasnick was seen by Ronald Williams, Ph.D., a neuropsychologist, who noted average to low intellectual abilities and a lack of discipline and attention, likely related to his head injury. (Tr. 285-87.) Testing revealed that Rasnick had a verbal IQ of 96, a performance IQ of 90, and a full scale IQ of 93, as well as mild impairment in fine motor skills, a seventh grade level in mathematics, fourth grade writing skills, impulsivity, tendency to be distracted, an inability to maintain his attention on one activity, personality problems, and a possible attention deficit disorder. (Tr. 281-84.)

In 1994, Rasnick was in a motor vehicle accident requiring use of a halo vest. (Tr. 325.) In November of that same year, Dr. Mark Porter, a neurologist, evaluated Rasnick because his family thought that he still had significant residual cognitive dysfunction from his accident that

was impairing his ability to be independent. (Tr. 278.) Dr. Porter stated that while Rasnick had experienced some physical improvement, he still had gait imbalance, tremors in his upper extremities, ocular dysmetria, mild cerebellar dyskinesias, mild dysarthia, inappropriate facial expressions, social difficulties, impaired short-term memory, very poor impulse control, difficulty with concentration and focus, and a tendency to make inappropriate statements. (Tr. 278.) Dr. Porter recommended that Rasnick undergo vocational rehabilitation in order to become more independent from his parents. (Tr. 279.)

In December 1995, Rasnick underwent a neuropsychological evaluation by Gregory Sowles, Ph.D. (Tr. 305-13.) The evaluation revealed that Rasnick had continued physical and cognitive problems, including some inappropriate laughter and facial expressions, mildly impaired attention and concentration, tangential thinking, abnormal articulation, gait and balance problems, poor fine motor dexterity, impulsivity, impaired right grip and manual dexterity, some memory impairment, and moderate problem-solving difficulties. (Tr. 305-09.) Intelligence testing revealed results within the average range, that is, a verbal IQ of 106, a performance IQ of 83, and a full scale IQ of 96. (Tr. 305-09.) Dr. Sowles opined that the use of a day planner, playing a racquet sport, use of an anti-depressant, and developing some independence from his family may all be beneficial. (Tr. 309-13.)

In May 1998, Rasnick underwent a consultative examination by Dr. George Merkle at the request of the Social Security Administration. (Tr. 329-32.) Dr. Merkle noted significant spasm affecting posture and gait, moderate difficulty getting on and off the exam table, difficulty with hopping and walking, stiffness, reduced grip strength, deterioration of fine finger manipulative abilities, moderate dysdiadochokinesia, and limited range of motion of the cervical and

5

dorsolumbar spine. (Tr. 329-33.) Dr. Merkle opined that Rasnick needed vocational rehabilitation. (Tr. 329-32.)

Also in May 1998, Rasnick was evaluated by Daniel Hauschild, Psy.D., at the request of the Social Security Administration. (Tr. 334-38.) Dr. Hauschild observed coordination problems, an euthymic affect, irritable mood, reading difficulties, and difficulty with visual recall. (Tr. 334-38.)

And, in July 1998, Dr. A. Lopez, a state agency physician, reviewed Rasnick's record and opined that Rasnick could perform sedentary work with occasional postural limitations except no climbing of ladders, ropes, or scaffolds, and no work around hazards. (Tr. 361-68.)

On July 29, 1998, the Commissioner awarded Rasnick DIB as of August 1, 1994.

C. *Medical Evidence of Record Since Rasnick's Award of DIB in 1998*

On July 14, 2003, Rasnick visited Dr. James Dozier of the Fort Wayne Neurological Center. (Tr. 406.) Dr. Dozier noted that Rasnick had developed some tremulousness in his arms and legs that seemed to be worsening as time went on, but noted no other neurological changes. (Tr. 406.)

On July 2, 2004, Rasnick was evaluated by Wayne Von Bargen, Ph.D., at the request of the Social Security Administration. (Tr. 369-73.) Dr. Von Bargen noted that Rasnick was taking on-line college courses and performing yard work for his father. (Tr. 369.) Upon testing, Dr. Von Bargen found that Rasnick had low average to average memory; he assigned Rasnick a GAF of 65, indicating a mild impairment.[2] (Tr. 369-73.)

---

[2] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id.*

Ten days later, Dr. Venkata Kancherla examined Rasnick at the request of the Social Security Administration. (Tr. 374-76.) Dr. Kancherla described Rasnick as "well-built" and described his gait as "brisk and normal." (Tr. 374-76.) He further noted that Rasnick could get on and off the examination table without assistance, recline, sit up, and squat. (Tr. 375.) He observed that Rasnick had some reduced range of motion in his cervical spine but that his other joints were normal. (Tr. 375.) He noted no motor or sensory deficits of the upper or lower extremities. (Tr. 376.)

On August 9, 2004, K. Neville, Ph.D., reviewed Rasnick's records and found no medically determinable impairment. (Tr. 377-90.) Dr. R. Bowgierd later affirmed Dr. Neville's opinion as to Rasnick's cognitive status. (Tr. 393.) Also in August 2004, Dr. M. Sihota, a state agency physician, reviewed Rasnick's records and found that his impairments were non-severe, noting that he had normal gait, good strength in both hands, and that there were no motor or sensory deficits. (Tr. 391.)

That same month, Rasnick had a spinal MRI, which revealed his previous cervical fusion but no other mal-alignment or acute findings. (Tr. 444.)

On October 1, 2004, Dr. Dozier evaluated Rasnick, noting that he had an occasional "clicking" in his bones and neck, as well as brief discomfort. (Tr. 403.) Dr. Dozier documented that Rasnick had otherwise been healthy; his neurological examination was normal. (Tr. 403.)

On December 16, 2004, Dr. Bruce Guebard, Rasnick's family physician, wrote a letter to the Social Security Administration opining that Rasnick's "cognitive impairments make it impossible for him to work effectively," and noting Rasnick's impaired short-term memory, very poor impulse control, some immature behavior, and difficulty staying focused. (Tr. 395.)

7

On January 5, 2005, Dr. Dozier reviewed an MRI taken the previous month and reported that Rasnick continued to have changes in his longstanding spasticity and a "clicking sensation" in his neck, but no significant pain. (Tr. 401.) Dr. Dozier indicated that Rasnick had been clinically stable other than for the "clicking," although he believed that he had "largely reached a plateau with regard to his neurologic status" and that his "status has not changed with regard to his disability." (Tr. 401.)

On February 17, 2005, D. Unversaw, Ph.D., reviewed Rasnick's record and noted that Rasnick's current evaluations did not show permanent injury from his traumatic brain injury. (Tr. 408-20.) He specifically noted that Rasnick's current psychological evaluation diagnosed no psychological disorder and that his cognitive functioning was intact. (Tr. 420.) Dr. Unversaw further noted that Rasnick's GAF score of 65 suggested that he had "some mild symptoms but is generally functioning pretty well." (Tr. 420.) He opined that Rasnick had no medically determinable impairment. (Tr. 408.)

On March 10, 2005, Rasnick was evaluated by Dr. David Lutz of the Fort Wayne Neurological Center. (Tr. 431-33.) He found Rasnick to have some cognitive and coordination difficulties and clinical symptoms of intermittent neck pain, for which he initiated physical therapy. (Tr. 431-33.) Rasnick then underwent physical therapy two to three times per week over the next several months for his neck pain and coordination issues, noting upon his discharge from therapy in June 2005 that he had significantly less neck pain and stiffness and that his neck felt "as good as it has ever." (Tr. 422-29.)

On September 7, 2006, Ronald Williams, Ph.D., who had seen Rasnick periodically since 1993, evaluated him for concerns about his temper control and marital and childcare issues. (Tr.

8

446.) Dr. Williams believed that there had been no change neurologically and recommended counseling to help Rasnick with his self-esteem and temper control, that he take Lexipro, and that he reduce his excessive use of caffeine. (Tr. 446-47.)

Rasnick participated in counseling sessions with Ken Shields, M.A., in 2007. (Tr. 448.) On March 16, 2007, Mr. Shields assessed that Rasnick had a mood disorder due to his head injury and assigned him a GAF of 65, indicating mild symptoms. (Tr. 448.) One month later, Dr. Williams and Mr. Shields opined that Rasnick had reached his "maximum improvement," and that his counseling treatment now focused on "managing his condition and maximizing use of his support system." (Tr. 445.)

## IV. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner

9

are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## V. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). After the Commissioner determines that a claimant is disabled, it will evaluate the claimant's impairments "from time to time" to determine if the claimant remains eligible for DIB. 20 C.F.R. § 404.1589. An individual's disability ends when substantial evidence demonstrates that his impairments have medically improved to the point that he can engage in substantial gainful activity. 42 U.S.C. § 423(f).

To determine if a claimant is still disabled, the Commissioner follows an eight-step evaluation process known as the continuing disability review ("CDR"), requiring consideration of the following issues, in sequence:

1. Is the claimant engaging in substantial gainful activity? If so, the Commissioner will find disability to have ended.

2. Having found that the claimant is not engaging in substantial gainful activity, does he have an impairment or combination of impairments which meets or equals the severity of one of the impairments listed by the Commissioner? *See* 20 C.F.R. § 404, Subpt. P, App. 1. If so, then disability will continue.

3. Having found at step two that the claimant's impairment does not satisfy a listing, has there been medical improvement as shown by any decrease in the medical severity of the claimant's impairment(s)? If there has been a decrease in medical severity, then proceed to step four; if there has been no decrease in medical

severity, then proceed to step five.

4. Having found at step three that there has been medical improvement as shown by a decrease in medical severity, the Commissioner must determine whether it is related to the claimant's ability to do work, that is, whether there has been an increase in the residual functional capacity ("RFC") that was present at the time of the most recent favorable medication determination. If the medical improvement is not related to the claimant's ability to do work, proceed to step five; if the medical improvement is related to the claimant's ability to do work, proceed to step six.

5. Having found at step three that there has been no medical improvement or at step four that the medical improvement is not related to the claimant's ability to work, the Commissioner next considers whether any exceptions apply. If no exception applies, then disability continues. If a particular exception applies, proceed to step six.

6. Having found at step four that the claimant's medical improvement is related to his ability to work or at step five that a particular exception applies, the Commissioner must determine if the claimant currently has a severe impairment. If the claimant's impairment(s) is severe, proceed to step seven. If the claimant does not have a severe impairment, he is no longer disabled.

7. Having found at step six that the claimant's impairment(s) is severe, the Commissioner will assess his current ability to do substantial gainful activity in accordance with 20 C.F.R. § 404.1560. That is, the Commissioner will assess the claimant's RFC based on the claimant's current impairments and consider whether he can still do work he has done in the past. If the claimant can do such work, he is no longer disabled. If the claimant cannot do such work, proceed to step eight.

8. Having found at step seven that the claimant can no longer perform his past work, the Commissioner will find the claimant is not disabled if he can perform other work, given his RFC, age, education, and vocational experience.

20 C.F.R. § 404.1594(f).

*B. The ALJ's Decision*

On November 20, 2007, the ALJ rendered his decision. (Tr. 22-31.) He found at step one of the eight-step analysis that Rasnick had not engaged in substantial gainful activity. (Tr. 25.) At step two, the ALJ determined that though Rasnick had medically determinable impairments

11

of neck pain and cognitive dysfunction/mood disorder, his impairments did not meet or equal a listing. (Tr. 25.) The ALJ then found at step three that there had been improvements in Rasnick's medical impairments since August 1994, and at step four that the medical improvement was related to his ability to work. (Tr. 26.) Consequently, the ALJ omitted step five. (Tr. 26.) At step six, the ALJ determined that Rasnick did not have a severe impairment and thus that he was no longer disabled as of August 1, 1994, never reaching steps seven or eight. (Tr. 27, 31.)

### C. The ALJ's Step Six Finding Is Not Supported by Substantial Evidence

Rasnick alleges that the ALJ erred at step six of his analysis by concluding that he did not have a severe impairment. Rasnick's argument, in part, has merit.

An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521; SSR 85-28; *Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999). Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs . . . ." 20 C.F.R. § 404.1521(b). These include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; use of judgment; understanding, carrying out, and remembering simple instructions; responding appropriately to supervision and co-workers; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

An impairment or combination of impairments is "not severe" when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." SSR 85-28. If this is the case, a finding of "not disabled" is made at step six, and the ALJ's analysis is complete.

12

However, "[i]f such a finding is not clearly established by medical evidence, . . . adjudication must continue through the sequential evaluation process." SSR 85-28.

In challenging the ALJ's step-six finding, Rasnick contends that the ALJ wrongly concluded that his cognitive and physical impairments were non-severe. Rasnick's argument with respect to his physical impairments has traction.[3] Here, the ALJ relied upon the opinions of Dr. Sihota, a reviewing state agency physician, and Dr. Kancherla, an examining physician. (Tr. 30.) The ALJ correctly observed that Dr. Sihota was the only physician of record to offer an express opinion as to Rasnick's physical limitations, and he specifically opined that Rasnick's impairments were non-severe. (Tr. 30). And, the ALJ noted that Dr. Kancherla's consultative

---

[3] Rasnick's argument with respect to his cognitive deficits, however, is less convincing. The ALJ's conclusion that Rasnick's psychological deficits are only "mild" in nature and thus are non-severe is supported by the medical evidence of record.

In that regard, the ALJ explained that Dr. Unversaw, the state agency psychologist, opined in February 2006 that Rasnick did not have a medically determinable mental impairment. (Tr. 27.) The ALJ further correctly noted that Dr. Von Bargen's psychological consultative examination in July 2004 and accompanying GAF score of 65 failed to show that Rasnick had anything more than mild cognitive limitations. (Tr. 28-29.) And, the ALJ observed that neither Dr. Williams nor mental health counselor Shields documented any significant mental limitations, as Mr. Shields rated Rasnick's GAF at 65 in March 2007. (Tr. 29); *see, e.g.*, *Eaton v. Astrue*, No. 3:07-CV-382 CAN, 2008 WL 2477580, at *5 (N.D. Ind. June 16, 2008) (affirming the ALJ's finding that the claimant's psychological condition was non-severe and caused only mild limitations of function, where the ALJ relied upon the opinion of a state agency physician who found that claimant's mental condition was non-severe).

Moreover, the ALJ acknowledged that the 2004 opinion of Dr. Guebard, Rasnick's family practitioner, who opined that Rasnick's capacity to perform certain cognitive tasks was significantly impaired, conflicts with the foregoing opinions concerning Rasnick's mental status. *See Ramirez v. Apfel*, No. 98 C 5687, 2000 WL 336552, at *5-6 (N.D. Ill. Mar. 28, 2000) (upholding the ALJ's decision that claimant's vision impairment was non-severe, where only one of six physicians of record assigned claimant any meaningful work limitations). In discounting Dr. Guebard's opinion, the ALJ explained that he generally would give greater weight to a treating physician's opinion, but that in this case, Dr. Guebard is a general practitioner and never extensively treated Rasnick's cognitive problems, instead referring him to a specialist, Dr. Porter. *Koswenda v. Astrue*, No. 08 C 4732, 2009 WL 958542, at *4 (N.D. Ill. Apr. 2, 2009) (affirming the ALJ's discounting of a treating physician's opinion where the physician was not a specialist, did not treat claimant during the relevant time period, and did not support his opinion with objective findings). The ALJ also noted that Dr. Guebard's more recent notes show a lack of regular treatment since 1998 and address only Rasnick's physical complaints. And finally, the ALJ reasonably inferred that Dr. Guebard was merely parroting the words of Dr. Porter from 1994. (*Compare* Tr. 395, *with* Tr. 278); *see Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) (acknowledging that an ALJ is entitled to make reasonable inferences from the evidence before him). Therefore, the ALJ gave several reasons for discounting Dr. Guebard's opinion. *See generally Nunez v. Bowen*, No. 88 C 729, 1990 WL 156521, at *2 (N.D. Ill. Oct. 9, 1990) ("Courts have consistently held that it is the province of the ALJ and not the Courts to resolve conflicts in medical evidence.").

13

physical examination revealed no significant abnormalities as to Rasnick's physical status, as Rasnick displayed normal gait and dexterity, intact strength, and good coordination in his evaluation. (Tr. 30.)

However, when it comes to the opinions of Dr. Dozier and Dr. Lutz, Rasnick's treating specialists, the ALJ engaged in an impermissible selective review of the evidence. "The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted).

While the ALJ emphasized that Dr. Dozier's October 2004 examination revealed that Rasnick had grossly normal upper and lower extremity strength, finger-to-nose, and sensory testing, and that the only abnormality was minimal paraspinal tenderness, he failed to acknowledge that Dr. Dozier *also* stated near that same time frame that Rasnick had longstanding changes in spasticity in his upper and lower extremities, and that he had developed some tremulousness in his arms and legs in recent years that "seems to be getting worse as time has gone on." (Tr. 401, 406-07, 435-36.) And, the ALJ also overlooked Dr. Lutz's finding in March 2005 that Rasnick's "[c]oordination remains impaired", that his finger-to-nose test revealed "past-pointing", and that ataxia was noted.[4] (Tr 425, 433.) In fact, at that time Dr. Lutz referred Rasnick to physical therapy not only for his cervical neck pain, but also for his "longstanding . . . coordination difficulties." (Tr. 433.)

Social Security Ruling 85-28 instructs that "[g]reat care should be exercised in applying

---

[4] Ataxia is "the inability to coordinate muscle activity during voluntary movement . . . ." *Stedman's Medical Dictionary* 172 (Lippincott Williams & Wilkins, 28th ed. 2006).

14

the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment . . . on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." SSR 85-28. Here, the ALJ turned a blind eye to evidence from Rasnick's treating specialists about his coordination problems, and in doing so failed to resolve conflicts in the medical evidence of record. *See Lee v. Barnhart*, No. 01 C 2776, 2003 WL 260682, at *5 (N.D. Ill. Feb. 6, 2003) ("Where conflicting evidence allows reasonable minds to differ, the responsibility for resolving the conflict falls on the ALJ, not the court." (citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)). Consequently, the non-severity of Rasnick's coordination problem is not "clearly established", and the ALJ erred by failing to continue through the sequential evaluation process.

As a result, it is recommended that the Commissioner's final decision be remanded so that the ALJ may revisit his step six finding.[5]

---

[5] Rasnick requested a remand of the Commissioner's decision as an alternative to an outright award of DIB. Because Rasnick has failed to establish that all of the factual issues have been resolved and that the record supports a finding of disability, an outright award of DIB is inappropriate here. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) (explaining that "an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability").

And, because a remand is warranted on Rasnick's step-six argument, the Court need not reach his remaining arguments. Yet, in that regard, from the Court's brief review of the ALJ's rather cursory credibility finding (*see* Tr. 30 ("[T]he undersigned finds that the claimant and his wife were quite sincere in testifying, but notes that their testimony is not well supported by the medical evidence."), the Commissioner is encouraged upon remand to revisit, and perhaps expand upon, the ALJ's credibility determination. *See generally* SSR-96-7p (stating that an ALJ may not make a credibility determination "solely on the basis of objective medical evidence"); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005) (explaining that the Social Security regulations "require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding").

## VI.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED, and the decision be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

SO ORDERED.

Enter for this 27th day of May, 2009.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge